**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

CLIFFORD PERKINS,
*Plaintiff,*

v.

GREATER BRIDGEPORT TRANSIT AUTHORITY,
EDWARD O'KEEFE,
CRYSTAL ENGRAM,
*Defendants.*

No. 3:21-cv-00357 (VAB)

**RULING AND ORDER ON MOTION TO DISMISS**

Clifford Perkins ("Plaintiff") has sued Greater Bridgeport Transit Authority ("GBTA"), Edward O'Keefe, and Crystal Engram (collectively, "Defendants") following his termination from employment, for deprivation of his equal protection and due process rights under the Constitution of the State of Connecticut and the Fourteenth Amendment of the United States Constitution, and for deprivation of his civil rights under 41 U.S.C. § 1983. Ex. A to Notice of Removal, ECF No. 1-1 (Mar. 16, 2021) ("Compl.").

Defendants move to dismiss Plaintiff's Complaint. Defs., Greater Bridgeport Authority, Edward O'Keefe, and Crystal Engram's, Mot. to Dismiss for Failure to State a Claim, ECF No. 15 (Apr. 22, 2021) ("Defs.' Mot.").

For the reasons stated below, Defendants' motion to dismiss is **GRANTED**.

The Court dismisses the equal protection claim as to all Defendants and the due process claims as to Mr. O'Keefe and Ms. Engram, without prejudice to Mr. Perkins filing an Amended Complaint by **April 22, 2022**.

# I. FACTUAL AND PROCEDURAL BACKGROUND

## A. Factual Allegations

Mr. Perkins worked as a bus driver with GBTA, "a public body corporate and politic." Compl. ¶ 1. Mr. Perkins allegedly drove for GBTA since June 1998. *Id.* ¶ 2.

"On or about November 5, 2019," Defendants allegedly "commenced an investigation concerning [Mr. Perkins's] bus allegedly coming into contact with a road construction sign that had been placed in the roadway." *Id.* ¶ 4. GBTA allegedly suspended Mr. Perkins on November 6, 2019, pending an investigation of the November 5 incident. *Id.* ¶ 5.

Mr. Perkins's Complaint states that "[a]t all times hereinafter mentioned the Defendants, Edward O'Keefe and Crystal Engram[,] were agents[,] servants, and[/]or employees of the Defendant, Greater Bridgeport Transit Authority." *Id.* ¶ 3.

According to Mr. Perkins, "[d]uring the Defendant's investigation" of the November 5 incident, "the Defendants including its hereinbefore named agents and/or employees reviewed the video from the bus operated by [Mr. Perkins]." *Id.* ¶ 7. After this review, "on or about November 13, 2019," GBTA terminated Mr. Perkins. *Id.* ¶¶ 8, 10.

Mr. Perkins alleges that "[p]rior to terminating [him] from employment, [he] was not provided with the video to review[,] to properly respond to the claim by the Defendant that [he] improperly operated his bus." *Id.* ¶ 9. This lawsuit followed, wherein Mr. Perkins claims that,

> The Defendants hereinbefore named, including the employees and agents of the Defendant, Greater Bridgeport Transit Authority, intentionally, recklessly[,] and/or negligently deprived the Plaintiff of his rights, privileges[,] and immunities secured to him by the constitution and laws of the United States and State of Connecticut including failing to afford the Plaintiff equal protection and due process of the laws in violation of Article 1, Section 20, and Article 1, Section 8 of the Constitution of the State of Connecticut and the 14th Amendment of the United States Constitution in addition [to] depriving the Plaintiff of his civil rights thereby violating 42 U.S.C.

> Section 1983 in that the Defendants failed to provide the Plaintiff with an opportunity for a fair hearing[;] failed to provide the Plaintiff with an adequate notice of the charges against him; failed to provide the Plaintiff with the evidence against him . . . including failing to provide the Plaintiff with a copy of the bus video to support the charges against the Plaintiff; failed to provide the Plaintiff with an adequate opportunity to respond to the charges against him; failed to provide the Plaintiff with a hearing before an impartial fact finder and decision; failed to adequately and properly investigate the accusations for the Plaintiff's dismissal[.]

*Id.* ¶ 11.

### B. Procedural History

On February 9, 2021, Mr. Perkins filed his initial Complaint in the Connecticut Superior Court, Judicial District of Fairfield alleging three counts against Defendants. *See* Compl.

On March 16, 2021, Defendants removed the action to this Court. Notice of Removal, ECF No. 1 (Mar. 16, 2021).

On April 22, 2021, Defendants filed a motion to dismiss Plaintiff's Complaint. Defs.' Mot.; Defs.' Mem. of Law in Supp. of Mot. to Dismiss for Failure to State a Claim, ECF No. 15-1 (Apr. 22, 2021) ("Defs.' Mem.").

On June 11, 2021, Plaintiff filed an opposition to Defendants' motion to dismiss. Pl.'s Mem. of Law in Supp. of Obj. to Def.'s Mot. to Dismiss, ECF No. 19 (June 11, 2021) ("Pl.'s Opp'n").

On July 9, 2021, Defendants filed a reply to Plaintiff's opposition to their motion to dismiss. Defs.' Reply Mem. in Supp. of Mot. to Dismiss, ECF No. 22 (July 9, 2021) ("Defs.' Reply").

## II. STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Any claim that fails "to state a claim upon

which relief can be granted" will be dismissed. Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), a court applies a "plausibility standard" guided by "two working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (internal citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Recs. LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 358 (2d Cir. 2013); *see also York v. Ass'n of the Bar of the City of N.Y.*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true.").

A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy*

*v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

## III. DISCUSSION

Mr. Perkins's Complaint alleges three causes of action: (1) deprivation of his equal protection and due process rights under Article 1, Section 20 and Article 1, Section 8 of the Constitution of the State of Connecticut; (2) deprivation of his equal protection and due process rights under the Fourteenth Amendment of the United States Constitution; and (3) deprivation of his civil rights under 41 U.S.C. § 1983.[1] *See* Compl. ¶ 11.

Defendants move to dismiss Plaintiff's Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Defs.' Mem. at 1. Defendants specifically move to dismiss Plaintiff's equal protection claim "as to all Defendants," all claims as to Mr. O'Keefe and Ms. Engram, and punitive damages as to GBTA. Defs.' Mot. at 1.

The Court will address the motion to dismiss as to each of Plaintiff's claims, to the extent necessary.

### A. The Claims Against Mr. O'Keefe and Ms. Engram

Defendants move to dismiss all claims as to Mr. O'Keefe and Ms. Engram in their official capacities because the claims are allegedly duplicative of the claims brought against

[1] This Court has federal question jurisdiction over this case because of Plaintiff's claims under the United States Constitution and 41 U.S.C. § 1983. *See, e.g.*, *Cinotti v. Adelman*, 709 F. App'x 39, 40 (2d Cir. 2017) (summary order) (stating that "§ 1983 claims . . . provide a basis for federal question jurisdiction").

GBTA. They also move to dismiss the equal protection and due process claims as to Mr. O'Keefe and Ms. Engram for alleged failure to plead any factual allegations to support their liability. Finally, Defendants move to dismiss the equal protection claim as to the two named Defendants because of alleged failure to state facts indicating that they played a role in his termination or the events leading to this termination.

**1. All Claims Against Mr. O'Keefe and Ms. Engram**

Defendants argue that Mr. Perkins "has failed to plead *any* factual allegations regarding actions taken by Edward O'Keefe and Crystal Engram such [as] to support any claims against them." Defs.' Mem. at 4. According to Defendants, "[n]owhere in his Complaint does [Mr. Perkins] plead any facts whatsoever as to what actions Mr. O'Keefe and Ms. Engram took or failed to take with respect to his termination or events leading up to the same." *Id.* "[Mr. Perkins] does not even allege that Mr. O'Keefe and Ms. Engram were responsible for conducting any investigation into the bus accident that resulted in his termination, participated in the decision to terminate his employment, recommended such termination, or made the ultimate decision to terminate him." *Id.* Because "all of the allegations as to Mr. O'Keefe and Ms. Engram are conclusory in nature," Defendants argue, Mr. Perkins's "Complaint in its entirety should be dismissed as to Mr. O'Keefe and Ms. Engram." *Id.*

Defendants also argue that the equal protection claim should be dismissed as to Mr. O'Keefe and Ms. Engram because "conspicuously absent from his Complaint are any factual statements whatsoever that Mr. O'Keefe and Ms. Engram were involved in the circumstances leading to his termination or in the decision to terminate his employment." *Id.* at 10.

Mr. Perkins responds by citing to four paragraphs from his Complaint that allegedly refer to Mr. O'Keefe and Ms. Engram's involvement in the events leading up to this lawsuit. First,

"[i]n paragraph 4 . . . [he] specifically alleges that the investigation concerning [his] actions as a bus operator which resulted in his termination was conducted by the Defendants' agents[,] servants[,] and employees[,] which are defined in the preceding paragraph 3 as the Defendants O'Keefe and Engram." Pl.'s Opp'n at 5–6. Second, "in paragraph 7 . . . [Mr. Perkins] . . . alleged that the Defendant through its 'hereinbefore named agents and/or employees' identified in paragraph 3 as the Defendants O'Keefe and Engram reviewed a video from [Mr. Perkins's] bus." *Id*. at 6. Third, "[p]aragraph 8 . . . indicates that after a review of the video[,] [Mr. Perkins] was terminated." *Id.* Finally, "[p]aragraph 10 . . . indicates [that] after the Defendants' investigation[,] which the [C]omplaint describe[s] as being conducted by the Defendants O'Keefe and Engram (paragraphs 3 and 4) [Mr. Perkins] was discharged from employment." *Id.* As a result, Mr. Perkins argues, "[a] fair reading of the [C]omplaint alleges specific allegations against the individual Defendants, O'Keefe and Engram." *Id.*

Defendants' reply brief argues that "none of the[] facts" mentioned in Mr. Perkins's objection "are actually pled in his Complaint." Defs.' Reply at 3. According to Defendants, paragraph 3 of the Complaint, which "defines [Mr. O'Keefe and Ms. Engram] as among GBTA's agents, servants, and employees . . . does nothing to make . . . clear what facts he is pleading to support his allegations that Ms. Engram and Mr. O'Keefe took any action against him." *Id.* at 4. Mr. Perkins's Complaint, according to Defendants, therefore "appears to be suggesting that every action taken by GBTA or its agents, servants, and employees, should be imputed upon Ms. Engram and Mr. O'Keefe, with no factual basis to support that conclusory allegation." *Id.* As a result, they argue, because the "Complaint is devoid of any specific facts related to any actions or inactions by Ms. Engram and Mr. O'Keefe related to the issues set forth in his lawsuit, the claims against them should be dismissed." *Id.*

The Court agrees.

Under *Bell Atlantic Corp. v. Twombly*, the Complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." 550 U.S. at 555 (internal quotation marks and alteration omitted). Mr. Perkins's Complaint, however, does not provide Mr. O'Keefe and Ms. Engram notice of the grounds on which their actions allegedly violated Mr. Perkins's rights.

The Complaint only explicitly mentions Mr. O'Keefe and Ms. Engram in paragraph 3, which states that both "were agents, servants, and or employees of the Defendant, Greater Bridgeport Transit Authority." Compl. ¶ 3. The only mention of Mr. O'Keefe and Ms. Engram's alleged actions is in paragraph 7, which states that "the Defendants, including its hereinbefore named agents and/or employees[,] reviewed the video from the bus operated by the Plaintiff." *Id.* ¶ 7. Paragraph 11 then only conclusively states that "[t]he Defendants hereinbefore named, including the employees and agents of the Defendant, Greater Bridgeport Authority, intentionally, recklessly[,] and/or negligently deprived the Plaintiff of his rights, privileges[,] and immunities . . . ." *Id.* ¶ 11.

While a Complaint "does not need detailed factual allegations," it must provide "[f]actual allegations [that are] enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, or "make the claim 'plausible,'" *Ideal Steel Supply Corp. v. Anza*, 652 F.3d 310, 323 (2d Cir. 2011) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Assessing the facts "asserted within the four corners of the [C]omplaint," *McCarthy*, 482 F.3d at 191, as described

above, Mr. Perkins's Complaint has failed to meet the requisite "facial plausibility" standard, *Iqbal*, 556 U.S. at 678.

Mr. Perkins shall have an opportunity to file an Amended Complaint by April 22, 2022 with sufficient factual allegations to meet the facial plausibility standard.

**2. The Due Process and Equal Protection Claims Against Mr. O'Keefe and Ms. Engram**

Defendants also argue that the due process and equal protection claims should be dismissed as to Mr. O'Keefe and Ms. Engram in their official capacities because they "are duplicative of the claims against GBTA." Defs.' Mem. at 5. Defendants state that "[c]laims against individual officials in their 'official' or 'professional' capacities are identical to claims brought against the government entity itself." *Id*. (citing *Petruso v. Schlaefer,* 474 F. Supp. 2d 430, 441 (E.D.N.Y. 2007)). Therefore, "[s]ince GBTA is named in [Mr. Perkins's] Complaint, judgment should enter as a matter of law on the claims against the individual Defendants, in their official capacities, as redundant and duplicative." *Id*. at 6.

Because these counts were dismissed above on other grounds, the arguments in favor of dismissing the due process and equal protection claims as to Mr. O'Keefe and Ms. Engram are moot.

**B. The Fourteenth Amendment Equal Protection Claim**

Defendants also move to dismiss the equal protection claim for failure to state a claim. Specifically, Defendants argue that under a theory of selective enforcement, Mr. Perkins "has failed to identify similarly situated comparators, failed to allege membership in a protected class, and has failed to allege that any of the conduct he complains of was a[] result of differential treatment based on a protected class." *Id*. at 7–8.

According to Defendants, in order to state an equal protection claim under a theory of selective enforcement, the plaintiff "must establish that he was '(1) treated differently from others similarly situated, and (2) that such differential treatment was based on impermissible considerations such as . . . intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Id.* at 8 (quoting *Fierro v. N.Y.C. Dep't of Educ.*, 994 F. Supp. 2d 581, 592 (S.D.N.Y. 2014)).

Defendants argue that Mr. Perkins's equal protection claim should be dismissed "because he has failed to identify a single similarly-situated employee to whom he might be compared" and "he has not . . . identified membership to a protected class, nor has he alleged that any actions taken toward him were due to impermissible discriminatory or malicious reasons." *Id.* at 8–9.

Mr. Perkins responds that he "is not required to identify in his [C]omplaint actual instances where others have been treated differently for purposes of equal protection." Pl.'s Opp'n at 12–13. Moreover, he argues, "[i]n this [C]ircuit there is no requirement that a plaintiff detail, with particularity, instances demonstrating the disparate treatment alleged in the [C]omplaint. It is sufficient to plead disparate treatment on information and belief." *Id.* at 9. Regarding the alleged need to claim membership in a class, Mr. Perkins argues that

> A plaintiff who does not allege any protected class affiliation can, nonetheless, demonstrate an equal protection violation where the plaintiff shows that he or she was treated differently from similarly situated individuals in circumstances . . . where the different treatment was based on a malicious or bad-faith intent to injure ("selective enforcement").

Pl.'s Opp'n at 10 (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *LeClair v. Saunders*, 627 F.2d 606, 609–10 (2d Cir. 2005)). Mr. Perkins "alleges selective enforcement violation of equal protection" and argues that "[t]he withholding of [the video] evidence from

[him] reflects the malicious bad faith intent to injure or punish [him] to support a selective enforcement claim in violation of equal protection." *Id.* at 10, 12.

In response, Defendants compare this case to *Gray v. Town of Easton*, 115 F. Supp. 3d 312, 319–20 (D. Conn. 2015), *aff'd sub nom. Gray v. Maquat*, 669 F. App'x. 4 (2d Cir. 2016) (summary order), where the district court dismissed the plaintiff's selective enforcement based equal protection claim and explained that "Plaintiffs do not allege that they are members of a protected class or that they have been penalized for their exercise of any fundamental right." Defs.' Reply at 4–5. Defendants disagree with Mr. Perkins's claim that he need not identify a "protected class or similarly-situated comparators, or comparable conduct by others" because "it is nonsensical that Plaintiff can allege a claim for intentional disparate treatment without identifying a protected class upon which to base differential treatment, others treated more favorably, or even a description of protected conduct engaged in by other employees." *Id.* at 5.

Defendants also point out that, even assuming that Plaintiff need only show that disparate treatment was based on "impermissible considerations" or "was wholly irrational or arbitrary," he has failed to plead any facts that Defendants' actions were motivated by impermissible considerations or were wholly irrational. *Id.* at 6. Therefore, Defendants argue, Mr. Perkins's equal protection claim should be dismissed. *Id.* at 6–7.

The Court agrees.

The Second Circuit has made clear that "[a] violation of equal protection by selective enforcement arises if:"

> (1) the person, compared with others similarly situated, was selectively treated; and (2) . . . such treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.

*Crowley v. Courville*, 76 F.3d 47, 52–53 (2d Cir. 1996) (quoting *LaTrieste Rest. & Cabaret Inc. v. Village of Port Chester*, 40 F.3d 587, 590 (2d Cir. 1994)); *see also Arteta v. County of Orange*, 141 F. App'x 3, 8 (2d Cir. 2005) (summary order) ("Under either [a class of one or selective enforcement] theory, a plaintiff must allege that he or she was treated differently from others similarly situated."). Where a plaintiff "does not allege selective treatment based upon . . . race, religion, or any intentional effort by defendants to punish him for exercising his constitutional rights," the plaintiff "must demonstrate that defendants maliciously singled [him] out . . . with intent to injure him." *Crowley*, 76 F.3d at 53.

As to the comparison with other similarly situated persons, the Second Circuit has clarified that, in a selective enforcement case, "the plaintiff's and comparator's circumstances" need not "be identical" but "must bear a reasonably close resemblance." *Hu v. City of New York*, 927 F.3d 81, 96 (2d Cir. 2019) (quoting *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 230 (2d Cir. 2014)). Mr. Perkins has not made any comparison to other similarly situated persons or provided any facts suggesting that he was treated differently than any other individual who was similarly situated. Likewise, he has not alleged that Defendants acted with malicious or bad faith intent to injure him. He has thus failed to state a claim upon which relief can be granted. *See, e.g.*, *Conquistador v. City of Hartford*, No. 3:15-CV-1618 (MPS), 2017 WL 5179229, at *4 (D. Conn. Nov. 8, 2017) (dismissing an equal protection claim where the "[p]laintiff's complaint d[id] not allege any facts suggesting that he was treated differently than anyone who was similarly situated . . . . [n]or d[id] it allege any facts suggesting that the officers' [actions] w[ere] . . . based on impermissible considerations"); *cf. Sidepockets, Inc. v. McBride*, No. 3:03-CV-742 (RNC), 2004 WL 555238, at *3 (D. Conn. Mar. 15, 2004) (denying a motion to dismiss a selective enforcement claim in violation of the Equal Protection Clause where the plaintiff's complaint

alleged that other businesses on the premises were similarly situated but were not treated the same way by the defendant and that the "defendant's conduct was motivated by animus" toward establishments like the plaintiff's).

Accordingly, the equal protection claim will be dismissed, but may be addressed, if the deficiencies identified above can be corrected, in any amended pleading filed by April 22, 2022.

**C. The Punitive Damages Claim as to GBTA**

"[P]laintiff's claim for punitive damages as to GBTA fails as a matter of law, regardless of the statute under which he seeks such relief, as it is well-settled that punitive damages may not be assessed against municipal entities." Defs.' Mem. at 10 (citing *Ware v. State*, 118 Conn. App. 65, 89 (2009) ("A municipality . . . can have no malice independent of the malice of its officials. Damages awarded for *punitive* purposes, therefore, are not sensibly assessed against the governmental entity itself.")).

Mr. Perkins did not address Defendants' motion to dismiss the punitive damages. In their reply brief, therefore, Defendants argue that "his claim for punitive damages should be deemed abandoned, and therefore, dismissed." Defs.' Reply at 2.

The Court agrees.

"[A] municipality is immune from punitive damages under 42 U.S.C. § 1983." *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). As a result, Mr. Perkins's claim for punitive damages as to GBTA fails as a matter of law.

Accordingly, any claim for punitive damages against GBTA in this case is dismissed, and cannot be revived even in any amended pleading.

**IV. CONCLUSION**

For the reasons stated above, Defendants' motion to dismiss is **GRANTED**.

The Court dismisses the equal protection claim as to all Defendants and the due process claims as to Mr. O'Keefe and Ms. Engram, without prejudice to Mr. Perkins filing an Amended Complaint by **April 22, 2022**.

**SO ORDERED** at Bridgeport, Connecticut, this 18th day of March, 2022.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE