**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| CLIFFORD PERKINS,<br>    *Plaintiff*,<br><br>    v.<br><br>GREATER BRIDGEPORT TRANSIT<br>AUTHORITY, EDWARD O'KEEFE, AND<br>CRYSTAL ENGRAM,<br>    *Defendants.* | No. 3:21-cv-00357 (VAB) |

**RULING AND ORDER ON MOTION FOR SUMMARY JUDGMENT**

Clifford Perkins ("Plaintiff") has sued his former employer, Greater Bridgeport Transit

Authority ("GBTA"), the assistant director of operations for GBTA, Edward O'Keefe, and the

human resources director for GBTA, Crystal Engram (collectively "Defendants"), for

discriminatory termination in violation of the Due Process and Equal Protection clauses of the

United States and Connecticut Constitutions. Amended Complaint, ECF No. 30 ("Am. Compl.").

Defendants have filed a motion for summary judgment. Mot. for Summ. J., ECF No. 36

("Mot.").

For the following reasons, Defendants' motion for summary judgment is **GRANTED**, as

to the federal claims.

The Court declines to exercise supplemental jurisdiction over any remaining state law

claims, and remands those claims and the remainder of the case back to Connecticut Superior

Court.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

   **A.  Factual Background[1]**

In June 1998, GBTA hired Perkins, who identifies as African American, as a bus

operator. L.R. 56(a)2 Statement of Facts ¶¶ 1–2, ECF No. 47 ("Pl.'s SMF"); L.R. 56(a)1

Statement of Facts ¶ 1, ECF No. 36-2 ("Defs.' SMF"). Bus operators at GBTA are a part of a

collective bargaining agreement between GBTA and the union. Pl.'s SMF ¶ 3.

On or about November 5, 2019, Perkins drove a bus owned by GBTA with three

passengers on it. Pl.'s SMF ¶¶ 5, 8. While on Main Street in Bridgeport, Connecticut, Perkins

had to slow suddenly for a road construction site. *Id.* While Perkins slowed his bus, a passenger

fell to the floor. *Id.* ¶ 7; Defs.' SMF ¶ 10. Perkins stopped the bus and reported the incident to the

GBTA dispatcher, who told Perkins to return to the bus terminal. Pl.'s SMF ¶ 8. An ambulance

was dispatched for the passenger who fell, and the two remaining passengers got off the bus. *Id.*

Allegedly unknown to Perkins, he hit a sign located in the construction site. *Id.* ¶ 9. So,

Perkins reported the incident as a "passenger occurrence" rather than a collision. *Id.* A collision

requires bus operators to report an "accident" rather than an "incident." Defs.' SMF ¶ 15.

In his capacity as assistant manager of transportation operation, O'Keefe suspended

Perkins on November 6, 2019, pending an investigation into the accident. Pl.'s SMF ¶ 11; Defs.'

SMF ¶ 16. On November 8, 2019, Perkins received a notice that a termination hearing would be

held on November 13, 2019. Pl.'s SMF ¶ 13.

GBTA buses, including the one operated by Perkins on November 5th, have video

cameras that record onboard and outside activity. *Id.* ¶ 10. Perkins alleges that, to no avail, he

---

[1] The following facts are taken from the complaint, the parties' Local Rule 56(a) statements, and related documents. The facts are presented in the light most favorable to Plaintiff as the non-moving party.

requested to view the footage from the accident twice before his termination hearing. *Id*. ¶¶ 12–13.

On November 13, 2019, Perkins attended his termination hearing with a union representative, Mustafa Salahuddin. *Id*. ¶ 15. O'Keefe and Engram were present as well. *Id*. At the hearing, Perkins allegedly could not view the video footage from the accident because there was no video equipment present. *Id*.

During the termination hearing, O'Keefe provided Salahuddin and Perkins with documents pertaining to the accident and a list of Perkins's past disciplinary history, which included one counseling, seven verbal warnings, nine written warnings, eight suspensions, and one "last chance" agreement in lieu of termination. Defs.' SMF ¶ 57; Defs.' Mem. of Law in Supp. of Mot. for Summ. J. ("Mem."), Ex. 8 to Ex. C, ECF No. 36-5. Perkins also spoke on his own behalf and stated that he would have reported an accident had he known about having hit the construction sign. Defs.' SMF ¶¶ 62–63. O'Keefe and Engram then allegedly asked Perkins and his representative to step out of the room. Pl.'s SMF ¶ 17. When they returned, Perkins received notice, by letter, of his termination. *Id*.

Following Perkins's termination, the union unsuccessfully grieved the termination. Defs.' SMF ¶ 78. During the grievance process, GBTA allegedly offered to allow Perkins to return to work on a "last chance" agreement in exchange for the withdrawal of his grievance, and Perkins allegedly declined the offer. *Id*.

### B.  Procedural History

On February 9, 2021, Perkins filed his Complaint in Connecticut Superior Court. Compl.

On March 16, 2021, Defendants removed the case to federal court based on federal question jurisdiction. Notice of Removal, ECF No. 1.

On April 22, 2021, Defendants filed their motion to dismiss the Complaint. Defs.' Mot. to Dismiss, ECF No. 15.

On June 11, 2021, Perkins filed an objection to Defendants' motion to dismiss. Pl.'s Mot. in Opp'n to Defs.' Mot. to Dismiss, ECF No. 19.

On July 9, 2021, Defendants filed a reply in support of their motion to dismiss. Reply in Supp. of Defs.' Mot. to Dismiss, ECF No. 22.

On July 10, 2021, the Court issued a scheduling order. Scheduling Order, ECF No. 23.

On March 18, 2022, the Court issued an Order granting Defendants' motion to dismiss, dismissing the equal protection claim as to all Defendants and the due process claims as to Mr. O'Keefe and Ms. Engram, without prejudice to Perkins filing an Amended Complaint. Order, ECF No. 27.

On April 22, 2022, Perkins filed an Amended Complaint against all Defendants. Am. Compl.

On May 23, 2022, Defendants filed their Answer to the Amended Complaint. Answer.

On September 12, 2022, Defendants filed their motion for summary judgment. Mot.; Mem., ECF No. 36-1.

On November 10, 2022, Perkins filed his opposition, as well as an amended opposition, to Defendant's motion for summary judgment. Pl.'s Opp'n to Summ. J., ECF Nos. 41, 44 ("Opp'n").

On December 2, 2022, Defendants filed a reply in support of their motion for summary judgment. Reply in Supp. of Defs.' Mot. for Summ. J., ECF No. 55 ("Reply").

## II.    STANDARD OF REVIEW

A court will grant a motion for summary judgment if the record shows no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-moving party may defeat the motion by producing sufficient evidence to establish that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48.

"[T]he substantive law will identify which facts are material." *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*; *see Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) ("[M]ateriality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." (citing *Anderson*, 477 U.S. at 248)).

"The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. When a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the non-moving party must do more than vaguely assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated

speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (internal quotation marks omitted).

The party opposing the motion for summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.* (internal quotation marks omitted). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 250 (citing *Dombrowski v. Eastland*, 387 U.S. 82, 87 (1967) and *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)).

A court must view any inferences drawn from the facts in the light most favorable to the party opposing the summary judgment motion. *See Dufort v. City of New York*, 874 F.3d 338, 343, 347 (2d Cir. 2017) ("On a motion for summary judgment, the court must 'resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought.'"). A court will not draw an inference of a genuine dispute of material fact from conclusory allegations or denials, *see Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011), and will grant summary judgment only "if, under the governing law, there can be but one reasonable conclusion as to the verdict," *Anderson*, 477 U.S. at 250.

## III. DISCUSSION

Perkins advances two claims in his Amended Complaint. Am. Compl.

First, Perkins claims that the Defendants failed to afford him procedural due process protections before his termination. Am. Compl. ¶¶ 11–14.

Second, Perkins claims that the Defendants deprived him of equal protection of the laws in violation of the Fourteenth Amendment to the United States Constitution. Am. Compl. ¶¶ 14–19.

The Court will address each claim in turn.

### A.  The Due Process Claim

"A public employee who has a right not to be fired without 'just cause' . . . has 'a property interest in his employment that qualifie[s] for the protections of procedural due process.'" *Otero v. Bridgeport Housing Authority*, 297 F.3d 142, 151 (2d Cir. 2002) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991) (alteration omitted); *see also* Mem., Ex. 1 to Ex. A ("The Authority shall have the right to discharge or otherwise discipline any employee for proper cause."). The protections of procedural due process require that an employee receive "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985) (citing *Arnett v. Kennedy*, 416 U.S. 134, 170–171 (1974)). But "[t]his is not to suggest that the Constitution demands notice that painstakingly details all facts relevant to the date, place, and manner of charged . . .  misconduct . . . ." *Sira v. Morton*, 380 F.3d 57, 72 (2d Cir. 2004).

Defendants argue that Perkins cannot prevail on a due process claim as a matter of law, as his termination was fully investigated, he was given notice of the charges against him, he was provided with an explanation of the relevant evidence, and he was given an opportunity to present his side. Mem. at 4.

In response, Perkins argues that he was not given the video from his bus on the date of the incident, and thus he was unable to present his side of the story. Opp'n at 9. Perkins also alleges that he did not receive a description of the charges against him. *Id*. at 12.

The Court disagrees.

As to Perkins's claim that he neither knew of the charges, or the evidence supporting them, there is record evidence that he did.

First, O'Keefe met with Perkins's union representative, Salahuddin, reviewed the video footage from Perkins's bus with him, and also provided Salahuddin with a copy of the video footage. Mem., Ex. B ¶¶ 28–29, ECF No. 36-4 ("[W]e viewed the video tape of the footage of the November 5, 2019 accident from the camera installed in Clifford Perkins' bus. . . . I also provided Mustafa Salahuddin with a copy of the November 5, 2019 accident video footage from Clifford Perkins' bus."). During that same meeting, O'Keefe also told Salahuddin about Perkins having failed to (1) provide the passengers with courtesy cards and collecting their information as potential witnesses; and (2) file the report as an accident, rather than an incident, as it was caused by Perkin's hitting something. *Id.* ¶ 30 ("I told him that I had concerns about the way Clifford Perkins had handled the situation, including not providing the passengers with courtesy cards, letting the passengers leave without asking if they were injured or getting their contact information as potential witnesses to an accident, and filing the report as an incident rather than an accident. . . . Perkins should have documented the passenger's injury as an accident because he when he hit something and slammed on his brakes, that caused the passenger to be ejected from her seat, and made the situation an accident."). O'Keefe also provided Salahuddin with a copy of the termination hearing notice, setting the hearing date, November 13, 2019. *Id.* ¶ 31 ("I provided Mustafa Salahuddin with a copy of Clifford Perkins Termination Hearing Notice, notifying him of the hearing scheduled for November 13, 2019.").

Second, Salahuddin confirms having met with O'Keefe, precisely as O'Keefe stated in his testimony. Mem., Ex. C ¶¶ 17–19, ECF No. 36-5 ("I viewed the video tape of the footage of the November 5, 2019 accident from the camera installed in Clifford Perkins' bus . . . . Ed

8

O'Keefe provided me with a copy of the November 5, 2019 accident video footage from Clifford Perkins' bus."). Salahuddin further states that he met with Perkins, reviewed the footage with him, and discussed O'Keefe's concerns with him. *Id*. ¶¶ 23–24, 26 ("I met with Clifford Perkins to review the video footage from his bus . . . . During my meeting with Clifford Perkins, I reviewed the video footage with him . . . . I also told Clifford Perkins that Ed O'Keefe had shared with me . . . [the concerns he had] about the incident report that Clifford Perkins had submitted and the way Clifford Perkins had handled the situation . . . .").

While Perkins denies both the account of O'Keefe and Salahuddin, Opp'n, Amended Ex. A ¶ 13–17, ECF No. 45 ("Opp'n, Am. Ex. A") ("Upon being suspended, I was not provided with a copy of any disciplinary Charges against me. . . . I did not view the video with my union representative. . . ."), this denial does not create a genuine issue of material fact with respect to Perkins's due process claim. Because Perkins does not deny being represented at the hearing by a union representative, and that union representative has conceded that the necessary notice had been provided to him,[2] any notice adequately provided to Salahuddin is deemed also to have been adequately provided to Perkins. *See Pavlovic v. Board of Educ. for City of Chicago*, No. 11 C 00830, 2012 WL 4361432, at *10 (N.D. Ill. Sep. 21, 2012) (finding timely notice to a union representative sufficient to satisfy due process notice requirement); *cf. Bye v. U.S.*, 105 F.3d 856, 857 (2d Cir. 1997) (holding that notice provided to counsel and "acknowledged" reasonably "apprise[d] [a party] of the pendency of the administrative forfeiture proceeding and . . . afford[ed] him an opportunity to present his objections. Accordingly, he received due process.");

---

[2] Although O'Keefe's articulated concerns were not identical to the ultimate charges, Mem., Ex. 6–8 to Ex. B, ECF No 36-4 ("Failure to report [motor vehicle] accident." "Failure to write a report of [motor vehicle] accident within [twenty-four hours]." "Leaving the scene of an accident of a [motor vehicle] accident [without] permission."), this Circuit deems "notice of at least some 'specific facts' underlying the accusation" to be sufficient. *Sira*, 380 F.3d at 70. Thus, by sharing specific facts underlying the accusation with Salahuddin, O'Keefe satisfied the notice requirement.

see also *Rosa R. v. Connelly*, 889 F.2d 435, 439 (2d Cir. 1989) ("Notice must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'") (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

Because there is record evidence that Perkins, through his union representative, knew of the charges and reviewed the evidence, and Perkins has failed to create a genuine issue of fact to the contrary, his due process claim must fail. *See Goenaga v. March of Dimes Foundation*, 51 F.3d 14, 18 (2d Cir. 1995) ("[T]he plaintiff cannot meet this burden through reliance on unsupported assertions. . . . [T]he nonmoving party, in order to defeat summary judgment, must come forward with evidence that would be sufficient to support a jury verdict in his favor.").

Accordingly, Defendants' motion for summary judgment on Perkins's federal due process claim in Count One of the Amended Complaint will be granted.

## B. The Equal Protection Claim

To establish a violation of equal protection based on selective enforcement, a plaintiff must ordinarily show that "(1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *LaTrieste Restaurant & Cabaret Inc. v. Village of Port Chester*, 40 F.3d 587, 590 (2d Cir. 1994) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609–10 (2d Cir. 1980)).

"Employees used as comparators in such an analysis need not be identically situated, but only must be similarly situated in all material respects." *Berube v. Great Atlantic & Pacific Tea Co., Inc.*, 348 Fed. Appx. 684 (2d. Cir. 2009) (citing *McGuinness v. Lincoln Hall*, 263 F.3d 49,

53–54 (2d Cir. 2001)). What suffices as "all material respects "must be judged based on (1) whether the plaintiff and those he maintains were similarly situated were subject to the same workplace standards and (2) whether the conduct for which the employer imposed discipline was of comparable seriousness." *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000). "Ordinarily, the question whether two employees are similarly situated is a question of fact for the jury." *Mandell v. County of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003).

Defendants argue that Perkins's equal protection claim must fail because he did not identify similarly situated comparators who were treated differently than Perkins. Mem. at 16. Specifically, Defendants argue that the employees Perkins identified did not have similar disciplinary history, nor similar conduct, thus explaining the more favorable treatment. *Id*. at 17.

In response, Perkins identifies three non-white drivers with arguably worse accidents than him who received more favorable treatment. *Id*. at 21. Perkins argues that material questions of fact exist as to whether Perkins was treated differently than these similarly situated individuals. Opp'n at 15.

The Court disagrees.

Perkins has failed to create a genuine issue of material fact with respect to the identified comparators allegedly similarly situated to him, providing some information, such as that they were all bus operators and that they had been in accidents, Opp'n, Am., Ex. A ¶¶ 23–25, but lacking critical information about their complete disciplinary history, such as whether these other bus operators reported their accidents—the conduct Perkins was accused of failing to do. Mem., Ex. D at 125, 130, 132–33; Pl.'s SMF ¶ 16. As a result, a jury could not determine "whether the conduct for which the employer imposed discipline was of comparable seriousness." *Graham*, 230 F.3d at 40; *see also Carris v. First Student, Inc.*, No. 5:13-CV-0923 (GTS/ATB), 2018 WL

3747844, at *11 (N.D.N.Y. Aug. 7, 2018) (determining that the plaintiff, an African-American

bus driver, failed to establish that three white bus drivers were similarly situated where she

offered "no evidence, other than her own recollection of hearsay, in support of the alleged

conduct and discipline of these other drivers"). Having failed to identify sufficient comparators,

Perkins also does not—and cannot—demonstrate that there was selective enforcement based on

his race. *See Edwards v. Metro-North Commuter R. Co.*, 463 F. Supp. 2d 279, 284 (D. Conn.

2006) (finding that "even if plaintiff's affidavit were sufficient to establish comparable

seriousness of violations committed between himself and the alleged comparators, the absence of

any evidence concerning the disciplinary records of the claimed comparators, particularly in light

of the severity of plaintiff's own disciplinary history, is fatal to his disparate treatment claim."

(citations omitted)). Indeed, given Perkins's considerable disciplinary history,[3] there is also

nothing in this record sufficient to create a genuine issue of material fact that the proffered

legitimate, non-discriminatory reason for his termination was pretextual. *Cf. Carris*, 2018 WL

3747844, at *12 ("There is no evidence in the record of another First Student bus driver, of any

race, who avoided termination after having violated the Confidentiality Policy in such a way that

prompted a parental complaint, while also being removed by [the school district] from all of its

routes.").

      Accordingly, the Defendants' motion for summary judgment as to Perkins' federal equal

protection claim in Count Two, will be granted.

---

[3] Additional information regarding the employment backgrounds of any alleged comparators is especially important here, given Perkins's rather specific and significant disciplinary history on the job before the November 5, 2019 accident: "one counseling, seven verbal warnings, nine written warnings, eight suspensions totaling 24 days, and a Last Chance Agreement . . . ." Mem. at 20.

### C. Supplemental Jurisdiction

Having dismissed all of Perkins's federal claims, his state law claims, which originally were brought in state court, should be remanded to state court, and adjudicated there. *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("[A] district court 'may decline to exercise supplemental jurisdiction' if it 'has dismissed all claims over which it has original jurisdiction.'") (quoting 28 U.S.C. § 1367(c)(3)); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims.").

Accordingly, the Court will remand those claims back to Connecticut Superior Court.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is **GRANTED**, as to the federal claims.

The Court declines to exercise supplemental jurisdiction over any remaining state law claims, and remands those claims and the remainder of the case back to Connecticut Superior Court.

The Clerk of Court is respectfully directed to close this case here, and remand it to the Connecticut Superior Court, Judicial District of Fairfield at Bridgeport.

**SO ORDERED** at Bridgeport, Connecticut, this 29th day of September, 2023.

 /s/ Victor A. Bolden            
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE